```
 1                    UNITED STATES OF AMERICA
                     SOUTHERN DISTRICT OF ILLINOIS
 2

 3    UNITED STATES OF AMERICA,      )
                                     )
 4              Plaintiff,           )
      V.                             ) No. 3:17-cr-30192-SMY-1
 5                                   )
      GRANT CLARK WASIK,             )
 6                                   )
                Defendant.           )
 7

 8
                    TRANSCRIPT OF PLEA PROCEEDINGS
 9
                 BEFORE THE HONORABLE STACI M. YANDLE
10                    UNITED STATES DISTRICT JUDGE

11                         January 29, 2019

12

13    APPEARANCES:

14    FOR PLAINTIFF:        Scott A. Verseman, Esq.
                            OFFICE OF THE U.S. ATTORNEY
15                          9 Executive Drive, Suite 300
                            Fairview Heights, IL  62208
16                          (618) 628-3700
                            scott.verseman@usdoj.gov
17
      FOR DEFENDANT:        Talmage E. Newton, IV, Esq.
18                          NEWTON BARTH, L.L.P.
                            555 Washington Ave., Suite 420
19                          St. Louis, MO  63101
                            (314) 272-4490
20                          tnewton@newtonbarth.com

21    REPORTED BY:          Christine Dohack LaBuwi, RDR, RMR
                            Official Court Reporter
22                          301 West Main Street
                            Benton, Illinois  62812
23                          (618) 439-7725
                            Christine_Dohack@ilsd.uscourts.gov
24
      Proceedings recorded by mechanical stenography, produced
25    by computer-aided transcription.
```

```
 1              (Proceedings began in open court at 2:25 p.m.)
 2              THE CLERK:  The Court calls Case No. 17-cr-30192,
 3    United States of America versus Grant Clark Wasik.  This
 4    matter is called for a change of plea.
 5              Would the parties please state your presence for
 6    the record?
 7              MR. VERSEMAN:  Good afternoon, Your Honor.  Scott
 8    Verseman on behalf of the United States.  I have with me
 9    at counsel table Postal Inspector Adam Latham, who is the
10    case agent on the case.
11              POSTAL INSPECTOR LATHAM:  Good afternoon, Your
12    Honor.
13              THE COURT:  Good afternoon.
14              MR. NEWTON:  Good afternoon, Your Honor.  Talmage
15    Newton for the defendant Grant Wasik, who is with me in
16    court this afternoon.
17              THE COURT:  Good afternoon, Mr. Newton.
18              And good afternoon, Mr. Wasik.
19              I have been informed that Mr. Wasik wishes to
20    enter a guilty plea pursuant to a Plea Agreement with the
21    Government; is that correct?
22              MR. NEWTON:  That is correct, Your Honor.
23              THE COURT:  And, Mr. Verseman, my understanding
24    is, Mr. Wasik will be entering a plea to Count 1 and that
25    the Government will move to dismiss Counts 2 through 14 at
```

1  sentencing; is that correct?
2       MR. VERSEMAN: That is correct, Your Honor.
3       THE COURT: All right. Mr. Newton, would you and
4  Mr. Wasik please approach the podium.
5       Mr. Wasik, could you please raise your right hand
6  and be sworn by the clerk?
7       (Defendant sworn by clerk.)
8                    GRANT CLARK WASIK,
9  having been first duly sworn, was examined and testifies
10 as follows:
11                      EXAMINATION
12 BY THE COURT:
13 Q.   All right. Mr. Wasik, do you understand that you
14 are now under oath?
15 A.   Yes, Your Honor.
16 Q.   And that as a result, anything that you say that
17 is untrue or false could be used against you in a future
18 prosecution for perjury or false statements; do you
19 understand that?
20 A.   Yes, Your Honor.
21 Q.   All right. Would you please state your full name
22 for the record?
23 A.   Grant Clark Wasik.
24 Q.   And how old are you, sir?
25 A.   36 years old.

```
1   Q.      And what is the extent your education?
2   A.      College.
3   Q.      All right.  I take it then that you can read,
4   write, and understand the English language?
5   A.      Yes, Your Honor.
6   Q.      Mr. Wasik, have you taken any type of medication
7   or drugs in the last 24 hours?
8   A.      No, Your Honor.
9   Q.      Have you consumed any alcohol in the last 24
10  hours?
11  A.      No, Your Honor.
12  Q.      All right.  Is there anything that's preventing
13  you, as you are standing there right now, Mr. Wasik, from
14  being able to think clearly and understand the proceedings
15  this afternoon?
16  A.      No, Your Honor.
17  Q.      Have you been provided with a copy of the
18  Superseding Indictment, that is, the written charges
19  against you in this case?
20  A.      Yes, Your Honor.
21  Q.      And have you had a chance to discuss the
22  Superseding Indictment, specifically Count 1 of that
23  Superseding Indictment, and your case in general with your
24  attorney Mr. Newton?
25  A.      Yes, Your Honor.
```

```
 1   Q.     Are you fully satisfied with the counsel,
 2   representation, and advice Mr. Newton has provided you in
 3   this case?
 4   A.     Yes, Your Honor.
 5   Q.     It's been alleged in Count 1 of the Superseding
 6   Indictment that you committed the offense of:  Conspiracy
 7   to Commit Wire Fraud.
 8          Do you understand the nature of that charge
 9   against you?
10   A.     Yes, Your Honor.
11   Q.     The penalties that can be imposed upon either a
12   plea or finding of guilty as to Count 1 of the Superseding
13   Indictment is:
14          No more than 30 years' imprisonment;
15          No more than a 250,000-dollar fine; and
16          No more than five years of supervised release; as
17   well as
18          A 100-dollar Special Assessment.
19          As far as supervised release.  Any conditions and
20   terms of supervised release that I might impose at the
21   time of sentencing, if you upon your release should
22   violate any of those terms and conditions, your release
23   status can be revoked and you could be sent back to
24   prison; do you understand that?
25   A.     Yes, Your Honor.
```

```
 1   Q.      Do you have any questions at this time regarding
 2   either the charge against you or the penalties associated
 3   with that charge?
 4   A.      No, Your Honor.
 5   Q.      Then let me explain your rights to you, Mr. Wasik:
 6           Sir, you are innocent until proven guilty;
 7           You need to be proven guilty beyond a reasonable
 8   doubt;
 9           You have a right to a jury trial;
10           You have a right to confront your accusers;
11           You have a right to bring in witnesses to testify
12   on your behalf;
13           You have a right against self-incrimination, which
14   means you don't have to testify unless you choose to do
15   so; and
16           You have a right to have an attorney present with
17   you at each stage of these proceedings.
18           Do you understand that?
19   A.      Yes, Your Honor.
20   Q.      It's my understanding, Mr. Wasik, that you wish to
21   plead guilty to Count 1 of the Superseding Indictment; is
22   that correct?
23   A.      That is correct, Your Honor.
24   Q.      All right.
25           THE COURT:  Is there -- is the Plea Agreement at
```

```
 1   the --
 2          MR. NEWTON:  (Nonverbal response.)
 3   Q.     (BY THE COURT)  I have been provided with the Plea
 4   Agreement.  I have had a chance to review it.  Let me ask
 5   you, sir, is that your signature on the last page of that
 6   Plea Agreement?
 7   A.     Yes, Your Honor.
 8   Q.     And did you have a sufficient opportunity to
 9   review and discuss in detail the terms of that Plea
10   Agreement with Mr. Newton before you signed it?
11   A.     Yes, Your Honor.
12   Q.     All right.  Do you understand that even though you
13   have reached this agreement with the Government, that I am
14   not bound by the specific terms of that Plea Agreement; do
15   you understand that?
16   A.     Yes, Your Honor.
17   Q.     All right.
18     (In compliance with AO policy, sidebar portion of
19   proceedings is excerpted and filed under separate cover.)
20          THE COURT:  Mr. Verseman, what are the essential
21   terms of the Plea Agreement in this case?
22          MR. VERSEMAN:  Yes, Your Honor.
23          As the Court has already noted, the defendant is
24   pleading guilty to only Count 1 of the Superseding
25   Indictment against him, and the United States has agreed
```

1  under the Plea Agreement to dismiss Counts 2 through 14,
2  which are all wire fraud counts, at the time of
3  sentencing.
4       With regard to the guidelines, Your Honor, the
5  Government has set forth in the Plea Agreement its
6  position which, in total, would place the defendant at an
7  offense level 31 with a criminal history category of four,
8  and a sentencing guideline range of 151 to 188 months.
9       Now, Mr. Newton in negotiating this plea has
10 reserved the right on behalf of the defendant to
11 challenge, number one, our loss calculation and, also, to
12 challenge the enhancement for a substantial part of the
13 scheme being conducted outside of the United States.
14      The Government has agreed to recommend a low end
15 of the guideline range.
16      Mr. Newton has reserved the right to argue the
17 3553(a) factors and recommend a sentence below what is
18 recommended by the Government.
19      And there is our standard appellate waiver in the
20 Plea Agreement, Your Honor.
21      THE COURT: Okay.
22 Q.   (BY THE COURT) Mr. Wasik, is that your
23 understanding, again, of the essential terms of the Plea
24 Agreement that you have entered into with the Government?
25 A.   Yes, Your Honor.

| | |
|---|---|
| 1 | Q. Sir, have any threats or promises been made to you |
| 2 | or against you in an effort to somehow force or induce you |
| 3 | to plead guilty in this case? |
| 4 | A. No, Your Honor. |
| 5 | Q. Is your intent to plead guilty then based on your |
| 6 | own free and voluntary act? |
| 7 | A. Yes, Your Honor. |
| 8 | Q. Do you understand that if I accept your plea |
| 9 | today, you will not be allowed to withdraw that plea at a |
| 10 | later date? |
| 11 | A. Yes, Your Honor. |
| 12 | Q. And in terms of the Government's agreement as to |
| 13 | what it will recommend for the purposes of sentencing or |
| 14 | the guideline calculations that the parties have agreed |
| 15 | to, do you understand that, again, this Court is not bound |
| 16 | by those agreements and neither is Probation, and that in |
| 17 | fact, ultimately, I may impose any sentence that's |
| 18 | authorized under the law? |
| 19 | A. Yes, Your Honor. |
| 20 | Q. All right. And Mr. Verseman also mentioned |
| 21 | certain waivers of your appeal rights and rights to |
| 22 | collaterally attack the sentence in this case that are set |
| 23 | forth in the Plea Agreement. Did you have a chance to |
| 24 | specifically discuss those waivers with Mr. Newton so that |
| 25 | you understand what rights you are actually waiving in |

```
 1   exchange for this Plea Agreement?
 2   A.      Yes, Your Honor.
 3   Q.      And in terms of sentencing.  Have you also had a
 4   chance to discuss with Mr. Newton the federal sentencing
 5   guidelines and certain statutory factors that are set
 6   forth at 18 U.S.C., Section 3553(a), and how those
 7   sentencing guidelines and statutory factors might apply
 8   when I sentence you?
 9   A.      Yes, Your Honor.
10           THE COURT:  Mr. Verseman, what's the factual
11   basis?
12           MR. VERSEMAN:  Yes, Your Honor.
13           I think Your Honor has had a few of these cases
14   already.  This arises out of the conspiracy that resulted
15   from this business known as Client Care Experts, that was
16   formerly known as First Choice Tech Support.  It was a
17   tech support business that operated out of south Florida.
18           The Government would prove that the defendant was
19   employed and participated in this conspiracy from
20   approximately July 24th, 2014, through about June 29th of
21   2016.
22           Specifically, we would prove that the defendant
23   knowingly and willfully conspired with the owners and the
24   other employees of this business to devise and participate
25   in a scheme to defraud, and to obtain property by means of
```

1  false and fraudulent pretenses, representations, and
2  promises.
3       This is what we call a Tech Support Scam, Your
4  Honor.  Basically, the way this operated was that the
5  owners and managers of this business purchased internet
6  advertisements known as pop-up ads, and these pop-up ads
7  would appear without warning on the victims' computers.
8  These pop-ups carried misleading and/or false information,
9  such as:  "A virus has been detected or malware has been
10 detected, you may be at risk of losing all your data on
11 your computer."  It usually advised that the customer not
12 shut down their computer, but they call a number on the
13 screen.  Sometimes these pop-ups froze up the person's
14 browser so that they couldn't exit out of them.
15      So, when the folks would call the number on the
16 screen, their calls would be routed to this business,
17 Client Care Experts, formerly known as First Choice Tech
18 Support.
19      Salespeople for the business would answer these
20 calls.  They would identify themselves as Level One
21 Diagnostic Technicians and then offer to help the people
22 with their computer problems.  The salespeople were given
23 a script to read and use during the sales calls.  The
24 scripts were used to deceive and mislead the customers
25 into thinking that there was something wrong with their

1   computer so they would make purchases from the business.
2       The way it went, Your Honor, the -- following the
3   script, the salespersons would ask to get remote access to
4   the person's computer. If the victim granted remote
5   access, then the salesperson would go into it, look
6   around. Usually they would comment on routine functioning
7   of the computer such as, *well, you have so many processes*
8   *running and that's an evidence of a problem or exposes you*
9   *to loss of data,* things of that nature. In addition,
10  sometimes the salespeople would state that the pop-ups
11  were evidence of problems with the people's computer.
12      But the salespeople would also run a program
13  called Webroot Analyzer on the victim's computer. This is
14  a real program and it can diagnose problems. But the
15  problem here was that even when Webroot showed that the
16  computer was in good shape, the salespeople frequently
17  tried to convince the victims otherwise, that their
18  computers had serious problems and that they needed to
19  purchase the goods and services.
20      The salespeople also used something called a "Best
21  Buy pitch" which was -- they would tell the folks that
22  they could go to Best Buy or some similar store to get
23  their computer fixed, but if they did that, it would cost
24  more money and Best Buy or the other store would have
25  their computer a lot longer than it would take Client Care

```
1    Experts to fix their computer.  That, in and of itself,
2    was false and we'd be able to prove that.
3           Throughout the calls, the salespeople concealed
4    from the victims the fact that if they just shut down
5    their computers or rebooted, that these pop-ups would go
6    away.  They also concealed that Client Care and First
7    Choice had actually played a role in causing those pop-ups
8    to appear on people's screens by purchasing them.
9           At the end of the call, the salespeople tried to
10   sell a computer "tune-up" usually for $250 to the victims.
11   They also tried to sell the victims anti-virus protection
12   software for 400 bucks.  If the customer said that they
13   didn't have the money to pay for these, then the
14   salespeople were authorized to offer discounts such as
15   military or senior citizens, or whatever.
16          Your Honor, if we went to trial, we'd prove that
17   this conspiracy victimized at least 57 people who resided
18   in the Southern District of Illinois.
19          As far as the defendant's role.  We would prove
20   that he worked as a salesperson when he first started
21   there, and that, from July through December of 2014, made
22   sales totaling approximately $99,027.17.  And when he was
23   a salesperson, he used that false and misleading sales
24   pitch that I have just described for Your Honor.
25          Then from approximately January 2015 through June
```

1    of 2015, the defendant was what they called a Team Leader.
2    And a Team Leader is a next step up from being
3    salesperson.  The Team Leader supervises a group of
4    salespersons.  So, he would have supervised a group of
5    salespeople as they gave this misleading sales pitch.
6         Then the defendant was again promoted a couple of
7    times throughout the remainder of his tenure at the
8    business, became the Sales Manager and eventually the Vice
9    President of the business.  During these time periods,
10   there were times when the defendant supervised the Team
11   Leaders; there were times when he controlled the number of
12   telephone calls coming into the business in response to
13   the pop-ups; at times, he was responsible for purchasing
14   the pop-ups; and, he was also responsible for the merchant
15   accounts, which are the accounts used to process the
16   credit card transactions.
17        And we would also prove, Your Honor, that the
18   defendant was aware that the conspiracy was using
19   interstate telephone calls for the purpose of executing
20   the scheme to defraud.
21        And we would prove that there were phone calls
22   from southern Florida to the Southern District of
23   Illinois.
24        And finally, we would prove that have this was a
25   telemarketing business that victimized 10 or more persons

1  over the age of 55.
2  Q.     (BY THE COURT)  Mr. Wasik, I have also been
3  provided with a document entitled Stipulation of Facts.
4  Is that your signature on that document?
5  A.     Yes, Your Honor.
6         THE COURT:  Mr. Verseman, is paragraph 24 correct?
7  That between -- for over a period of less than a year,
8  after Mr. Wasik was promoted to Sales Manager and Vice
9  President, that the company made sales totaling over $12
10 million?
11        MR. VERSEMAN:  That's what our records reflect,
12 Your Honor.
13        THE COURT:  Okay.
14 Q.     (BY THE COURT)  Mr. Wasik, in terms of the factual
15 basis, in other words, the evidence that the Government
16 would present against you if this case were to go to
17 trial, as Mr. Verseman just detailed and as is also set
18 forth in the Stipulation of Facts, do you agree with that
19 factual basis, sir?  In other words, did you do what the
20 Government said you did in this case?
21 A.     Yes, Your Honor.
22 Q.     Do you have any questions at this point before I
23 proceed to your plea?
24 A.     No, Your Honor.
25 Q.     Then at this time, Mr. Wasik, I'm going to ask how

```
 1   you plead to the charge in Count 1 of the Superseding
 2   Indictment, that you committed the offense of Conspiracy
 3   to Commit Wire Fraud, guilty or not guilty?
 4   A.      Guilty.
 5           THE COURT:  The Court finds that a factual basis
 6   exists.  That this defendant has knowingly, voluntarily,
 7   and competently pled guilty to Count 1 of the Superseding
 8   Indictment, and the Court hereby adjudges the defendant
 9   guilty of violating said offense.
10           Sentencing is set for May 2nd, 2019, at 10:30 a.m.
11           Mr. Wasik, Probation will be preparing a written
12   Presentence Investigation Report to assist me in
13   sentencing you on that day.  You'll get a copy of the
14   report.  You'll have a right to review that report in
15   detail with your attorney Mr. Newton.  Included in that
16   report will be proposed Special conditions of supervised
17   release, which you will also have an opportunity to object
18   to, if you see fit.  Finally, you'll have a chance to
19   provide information to be included in that report for my
20   consideration, and to have Mr. Newton present with you at
21   that time, if you so choose.
22           You understand that?
23           THE DEFENDANT:  Yes, Your Honor.
24           THE COURT:  Okay.  I know that Mr. Wasik has been
25   on release pursuant to a unsecured bond since December 8th
```

```
 1   of 2017, which is over a year.  And I have received the
 2   Pretrial Services status report which indicates that Mr.
 3   Wasik has remained compliant with his conditions.
 4           And I know that's being supervised out of Florida,
 5   I think.
 6           MR. VERSEMAN:  I think so, Your Honor.
 7           THE COURT:  All right.  Mr. Verseman, does the
 8   Government have a position on detention or release?
 9           MR. VERSEMAN:  Based on the fact that there have
10   been no violations of the bond, we don't object to the
11   Court continuing the bond until sentencing.
12           THE COURT:  All right.  Mr. Wasik, because you
13   have been compliant with the conditions and there have
14   been no problems, there is no basis to detain you pending
15   sentencing.
16           I would, however, point out, it's important that
17   you continue to comply with each one of those conditions.
18   And that, if you should fail to do so at this point, your
19   release status could be revoked and you could be detained
20   and put in custody pending sentencing in this case.
21           Do you understand that?
22           THE DEFENDANT:  Yes, Your Honor.
23           THE COURT:  Okay.  Anything else, Mr. Verseman?
24           MR. VERSEMAN:  Not by the Government, Your Honor.
25           THE COURT:  Mr. Newton?
```

```
1        MR. NEWTON:  No, Your Honor.  Thank you.
2        THE COURT:  Okay.  Thank you.
3        (Court adjourned at 2:45 p.m.)
```

### REPORTER'S CERTIFICATE

I, Christine Dohack LaBuwi, RDR, RMR, Official Court Reporter for the U.S. District Court, Southern District of Illinois, do hereby certify that I reported with mechanical stenography the proceedings contained in pages 1-18; and that the same is a full, true, correct and complete transcript from the record of proceedings in the above-entitled matter.

DATED this 29th day of July, 2019,

s/*Christine Dohack LaBuwi, RDR, RMR*
_____
Christine Dohack LaBuwi, RDR, RMR